UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVARIOL MARQUAVIS TAYLOR,

                    Plaintiff,                          Case No. 1:21-cv-779

v.                                                      Honorable Phillip J. Green

BUFFY TOROK, et al.,

                    Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 5.)  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Ferguson, Simon, and Hengesbach.

The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claims against Defendants Torok, Rees, Hawn, and VanNortrick, as well as the following Eighth Amendment claims against Defendants Hawn and Rees:  the deprivation of five meals in a period of seven weeks and a time restriction of less than five minutes to eat four other meals in a period of five weeks; the denial of a shower and yard time on June 2, 2021, July 8, 2021, and July 9, 2021; and the limitation on cleaning his cell to only twice in a period of six months.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Nurse Buffy Torok, Corrections Officers Unknown Rees and Unknown Hawn, Captain/Inspector Gary Ferguson, Prisoner Counselor/Grievance Coordinator E. Simon, Prisoner Counselor Unknown Hengesbach, and Nurse Ericka Trainer-VanNortrick.

Plaintiff alleges that Defendant Hawn subjected him to excessive force on March 9, 2021, at 9:00 a.m.  Plaintiff states that during COVID-19 testing, Defendant Hawn kicked Plaintiff in the leg while placing him back in his cell.  Defendant Hawn allegedly continued trying to kick Plaintiff multiple times.  Plaintiff yelled at Defendant Torok seeking help, but she ignored Plaintiff.  Following the assault, Defendant VanNortrick refused to call Plaintiff out of his cell to check his injuries because Plaintiff had written a grievance on her weeks earlier.  Plaintiff was not able

to get his injuries documented for two to three weeks because Defendant VanNortrick refused to examine Plaintiff.  Plaintiff was told by another nurse that all kites went to Defendant VanNortrick and that she threw Plaintiff's kites away.

Defendant Ferguson spoke to Plaintiff about the assault by Defendant Hawn on March 11, 2021.  Following this interview, Defendant Rees assaulted Plaintiff by kicking him and stepping on his foot before returning Plaintiff to his cell.  Plaintiff wrote grievances about both assaults, but they were denied by Defendant Simon.  On March 15, Plaintiff spoke to Defendant Ferguson again, but Defendant Ferguson merely told Plaintiff that he was a liar and warned Plaintiff not to ask him for help. Plaintiff spoke with an unnamed nurse on March 31, 2021, who told him that the video showing the assault by Defendant Hawn had been doctored, and that it now showed no one in the hallway.

Plaintiff contends that the call button in his cell has been removed and the water in his cell has been turned off.  Plaintiff alleges that his kites for assistance have been thrown away by staff.  Plaintiff states that Defendant Ferguson is responsible for letting these violations occur.  Plaintiff states that Defendant Ferguson prevented him from using J-pay on April 3, 2021.  On April 12, 2021, Plaintiff filed step II grievances related to the assaults by Defendants Hawn and Rees.

On April 14, 2021, Defendant Hawn refused to give Plaintiff a tray for the entire day.  On May 8, Defendant Hawn refused to allow Plaintiff to use J-pay.  On May 12, 2021, Plaintiff asked Defendant Hengesbach to take pictures of his cell,

which had not been cleaned in four months.  The next day, Plaintiff's cell was finally cleaned.

On June 2, 2021, Defendants Hawn and Rees denied Plaintiff lunch, shower, yard time, and a cell cleaning.  Defendant Ferguson and Sergeant Swanson held Plaintiff's legal mail from June 3, 2021, until June 7, 2021.  On June 4, 2021, Defendant Ferguson made sure that Plaintiff's store order did not contain the items he had ordered.  On June 5, 2021, Plaintiff was assaulted by Defendants Hawn and Rees, and was not given enough time to eat.  Plaintiff was also denied a haircut.  On June 7, 2021, Defendant Ferguson made sure that Plaintiff did not get a store order at all.  On June 14, 2021, Plaintiff requested a record of dates that he had received a shower, yard time, or a cell cleaning.  He never received the requested information.

On June 15, 2021, Plaintiff received a memo from Defendant Hengesbach stating that Plaintiff could not receive any more legal materials until he returned the ones he already had.  Plaintiff states that he had already turned all the materials in and that Defendant Hengesbach was lying.  On June 17, 2021, Plaintiff was refused yard time and a shower.  On June 19, 2021, Defendant Rees refused to allow Plaintiff to use J-pay to report his issues to another inspector.  On June 21, 2021, Defendant Ferguson told Defendant Hengesbach not to submit Plaintiff's grievances.  On June 22, 2021, Plaintiff gave Defendant Hengesbach a kite and asked him why he was being retaliated against.  On the same day, Defendants Hawn and Rees refused to allow Plaintiff yard time.  On June 23, 2021, Plaintiff asked Defendant Rees why he was being retaliated against.

On June 29, 2021, Defendant Ferguson told the property room not to return Plaintiff's property even if he was off sanctions.  Plaintiff still does not have his property.  On June 30, 2021, Defendants Rees and Hawn banged on the rails during every round and gave Plaintiff less than five minutes to eat his breakfast and lunch. On July 2, 2021, Defendant Hawn turned off the water in Plaintiff's cell.  On July 3, 2021, Defendant Rees refused to sign Plaintiff up for a haircut.  On July 8, 2021, Defendants Rees and Hawn denied Plaintiff yard, cell cleaning, showers, breakfast, and laundry.  Defendant Hawn attempted to deny Plaintiff lunch by walking by his cell very quickly, but then only gave Plaintiff five minutes to eat.  On July 9, 2021, Defendant Hawn banged on Plaintiff's cell door during each round.  On July 10, 2021, Defendant Hawn denied Plaintiff shower and yard and banged on his cell door during each round.  On July 17, 2021, Plaintiff's cell was finally cleaned for the first time in months.

In a pleading filed a few weeks after Plaintiff's complaint (ECF No. 6), Plaintiff added additional factual claims against Defendant Rees (Rees slammed Plaintiff's hand in the food slot on nine occasions between July 23, 2021, and August 25, 2021) and Defendant Hawn (Hawn slammed Plaintiff's hand in the food slot on four occasions between July 8, 2021, and July 14, 2021).

Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

## II.    Additional factual allegations

Plaintiff asks the Court to add the factual allegations regarding Rees, Hawn, and the food slot hand-slamming to his initial complaint.  The Court construes Plaintiff's request as a motion to amend his complaint pursuant to Federal Rule of Civil Procedure 15.  A party may amend the complaint once as a matter of course before a responsive pleading is served.  *See* Fed. R. Civ. P. 15(a).  Leave of court is not required.  The Court will consider Plaintiff's additional allegations as the amendment he is permitted as a matter of course.  Further amendment or supplementation of the complaint will require leave of Court.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV. No right to file a grievance

Plaintiff claims that Defendant Simon denied Plaintiff's grievances regarding the alleged assaults by Defendants Hawn and Rees. Plaintiff also claims that Defendant Ferguson told Hengesbach not to submit Plaintiff's grievances, and that Defendant Hengesbach told Plaintiff not to file any grievances. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430

(6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants Simon, Ferguson, and Hengesbach did not deprive him of due process.

Nor was Plaintiff's right to petition the government violated by Defendants Simon, Ferguson, and Hengesbach's failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, the actions of Defendants Simon, Ferguson, and Hengesbach have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while

leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendants Simon, Ferguson, and Hengesbach.

## V.      Access to the courts

Plaintiff appears to be asserting access-to-courts claims against Defendants
Hengesbach and Ferguson.   Plaintiff alleges that on June 15, 2021, Defendant
Hengesbach told Plaintiff that he could not receive any more legal materials until he
returned the ones he already had, despite the fact that Defendant Hengesbach knew
Plaintiff had already returned the previously borrowed legal materials.   Plaintiff also
claims that Defendant Ferguson held his legal mail from June 3, 2021, until June 7,
2021.

It is well established that prisoners have a constitutional right of access to the
courts.   *Bounds v. Smith*, 430 U.S. 817, 821 (1977).   The principal issue in *Bounds*
was whether the states must protect the right of access to the courts by providing law
libraries or alternative sources of legal information for prisoners.   *Id.* at 817.   The
Court further noted that in addition to law libraries or alternative sources of legal
knowledge, the states must provide indigent inmates with "paper and pen to draft
legal documents, notarial services to authenticate them, and with stamps to mail
them."   *Id.* at 824–25.   The right of access to the courts also prohibits prison officials
from erecting barriers that may impede the inmate's access to the courts.   *See Knop
v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is
not, however, without limit.   In order to state a viable claim for interference with his
access to the courts, a plaintiff must show "actual injury."   *Lewis v. Casey*, 518 U.S.
343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*,
977 F.2d at 1000.   In other words, a plaintiff must plead and demonstrate that the

shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 415.

11

In this case, Plaintiff fails to allege that he suffered from any injury to a nonfrivolous legal claim. Therefore, Plaintiff's access to courts claims against Defendants Ferguson and Hengesbach are properly dismissed.

## VI.    Procedural due process

Plaintiff claims that Defendant Ferguson deprived him of his property by telling the officers who work in the property room not to return Plaintiff's property after he got off sanctions. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers."  Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's due process claim against Defendant Ferguson will be dismissed.

## VII.   Retaliation

Plaintiff makes conclusory claims that Defendants conduct toward him was motivated by a desire to retaliate against him.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X*, 175 F.3d at 394.  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary

firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff alleges that he filed a grievance against Defendant VanNortrick an unspecified number of weeks prior to the assault by Defendant Hawn on March 9, 2021.  In addition, following the alleged assaults by Defendants Hawn and Rees, Plaintiff filed grievances regarding the incidents.  Plaintiff does not allege that any of the named Defendants made specific statements indicating that their conduct was motivated by a desire to retaliate against him, but seems instead to presume an improper retaliatory motive based on the mere fact that he had filed grievances.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. §

1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He merely concludes that because he filed some grievances within a few days, weeks or months before Defendants' actions, their actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). Plaintiff merely alleges temporal proximity between Defendants' conduct and his grievances. Such allegations are insufficient to state a retaliation claim.

## VIII.  Eighth Amendment

Plaintiff appears to be claiming that Defendants Hawn, Rees, Torok, and VanNortrick violated his rights under the Eighth Amendment.   The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).   The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."

*Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).   The deliberate-indifference standard includes both objective and subjective components.  *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.

Plaintiff claims that Defendants Hawn deprived him of his meals on April 14, 2021, and that Defendants Hawn and Rees denied him lunch on June 2, 2021. Plaintiff also claims that on June 5, 2021, and June 30, 2021, Defendants Hawn and Rees gave him less than five minutes to eat his breakfast and lunch, and that on July 8, 2021, Defendant Hawn gave him less than five minutes to eat lunch.  Plaintiff states that he was unable to eat that quickly.

The Court notes that "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam).  Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation.  *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).  Plaintiff's allegations that he missed five meals in a period of seven weeks, and that he was given less than five minutes to eat four other meals in a period of five weeks falls short of stating a claim under the objective prong of the deliberate-indifference standard.

18

Plaintiff also claims that Defendants Hawn and Rees denied him a shower and yard time on June 2, 2021, July 8, 2021, and July 9, 2021.  Plaintiff also claims that these defendants denied him a cell cleaning on June 2, 2021, and July 8, 2021, and that Defendant Hawn turned off the water in Plaintiff's cell on July 2, 2021.

It unquestionably is well established that "'total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees.'"  *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)); *see also Argue v. Hofmeyer*, 80 F. App'x 427 (6th Cir. 2003).  Nevertheless, it is equally well established that allegations about temporary inconveniences do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.  2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

Here, accepting as true Plaintiff's allegation that he received no out-of-cell exercise on four occasions during June and July of 2021, Plaintiff's allegations describe a mere temporary inconvenience.  Moreover, Plaintiff does not allege that his cell was too small to permit any exercise or that he suffered any ill effects from the temporary limitation on his yard privileges.  *See, e.g.*, *May v. Baldwin*, 109 F.3d 557, 565–66 (9th Cir. 1997) (denial of out-of-cell exercise for 21 days did not rise to

Eighth Amendment violation); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."); *Davenport v. DeRobertis*, 844 F.2d 1310 (8th Cir. 1988) (upholding a 90-day segregation threshold before five hours of weekly out-of-cell exercise is required), *cited with approval in Pearson v. Ramos*, 237 F.3d 881, 884–85 (7th Cir. 2001); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (no Eighth Amendment violation when plaintiff was held in segregation without outdoor exercise for 28 days).

In addition, the Court notes that the Constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene.  Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *See Dellis*, 257 F.3d at 511 (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (denial of shower and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of

decency under the Eighth Amendment); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven-day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); *see also Taft*, 439 F. Supp. 2d at 811 ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

The refusal to allow the occasional shower constitutes a mere temporary inconvenience. *See Siller*, 2000 WL 145167, at *2; *Metcalf* 1998 WL 476254, at *2; *Evans v. Bruge*, No. 1:20-cv-833, 2020 WL 5742748, at *5 (W.D. Mich. Sept. 25, 2020) (denial of two showers, one week apart, is a mere temporary inconvenience that does not violate the Eighth Amendment); *Rogers v. Mackie*, No. 1:20-cv-394, 2020 WL 3989432, at *8 (W.D. Mich. July 15, 2020) (denial of soap and a shower for two days did not violate the Eighth Amendment); *Lewis v. Guinn*, No. 2:05-cv-287, 2006 WL 560648, at *4 (W.D. Mich. Mar. 3, 2006) (deprivation of single shower does not implicate Eighth Amendment); *see also Barnett v. Fitz*, No. 1:19-cv-987, 2020 WL 205288, at *4 (W.D. Mich. Jan. 14, 2020) (holding that an allegation that the defendant "would skip [Plaintiff for] showers and gym time because [Plaintiff] wasn't at the door" did not permit a determination that the defendant deprived the plaintiff of hygiene and exercise within the meaning of the Eighth Amendment).

Further, Plaintiff's allegations about the lack of cell cleaning are extremely conclusory. Plaintiff states that his cell was cleaned on May 13, 2021, after four months, and again on July 17, 2021, after just over two months. However, Plaintiff

fails to allege the actual condition of the cell, or to portray it as filthy, as described in *Taylor v. Riojas*, 141 S. Ct. 52 (2020), where feces covered the walls and floors and were packed into the water faucet. Indeed, Plaintiff does not even allege that he was denied cleaning materials during this period, merely that his cell had not been cleaned. As a consequence, Plaintiff's allegations regarding the lack of cell cleaning fall well short of meeting the objective component of the Eighth Amendment standard.

Plaintiff also alleges that Defendant Hawn assaulted him by kicking him on March 9, 2021, and that Defendant Rees also kicked him without provocation on March 11, 2021. In addition, Plaintiff states that on June 5, 2021, he was assaulted by Defendants Hawn and Rees. Plaintiff also alleges that Defendants Hawn and Rees slammed his hand in the food slot while serving him meals on multiple occasions. (ECF No. 6.) Plaintiff specifically identifies the dates and meals associated with each incident. The Court concludes that although Plaintiff's allegations are somewhat conclusory, especially with regard to the June 5, 2021, incident, Plaintiff has alleged sufficient facts to state Eighth Amendment claims of excessive force against Defendants Hawn and Rees.

Plaintiff claims that Defendant Torok violated his Eighth Amendment rights by failing to intervene during the assault by Defendant Hawn on March 9, 2021. An officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'"

*Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *accord Alexander v. Carter ex. rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).  In this case, it is not clear whether Defendant Torok had both the opportunity and the means to prevent the harm from occurring. However, the Court accepts Plaintiff's allegations as true, as it must at this stage of the proceedings and concludes that Plaintiff has succeeded in stating an Eighth Amendment claim against Defendant Torok.

Finally, Plaintiff claims that Defendant VanNortrick violated the Eighth Amendment when she refused to examine Plaintiff for a period of two to three weeks following the assault on March 9, 2021.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  Based on the allegations in Plaintiff's complaint, the Court concludes that he has stated an Eighth Amendment claim against Defendant VanNortrick.

<u>**Conclusion**</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Ferguson, Simon, and Hengesbach will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim,

Plaintiff's retaliation claims against Defendants Torok, Rees, Hawn, and VanNortrick, as well as the following Eighth Amendment claims against Defendants Hawn and Rees:  the deprivation of five meals in a period of seven weeks and a time restriction of less than five minutes to eat four other meals in a period of five weeks; the denial of a shower and yard time on June 2, 2021, July 8, 2021, and July 9, 2021; and the limitation on cleaning his cell to twice in a period of six months.  Plaintiff's Eighth Amendment excessive force claims against Defendants Rees and Hawn and his Eighth Amendment claims against Defendants Torok and VanNortrick remain in the case.

An order consistent with this opinion will be entered.


Dated:   December 30, 2021                    /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge