UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVARIOL TAYLOR #940436,

        Plaintiff,                                      Hon. Phillip J. Green

v.                                                              Case No. 1:21-cv-779

BUFFY TOROK, et al.,

        Defendants.
_____/

## OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 33).   The parties have consented to proceed in this Court for all further proceedings, including trial and an order of final judgment.   For the reasons discussed herein, Defendants' motion will be granted.

## BACKGROUND

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF).      But the events about which Plaintiff complains occurred at the Ionia Correctional Facility (ICF).   Plaintiff has sued Nurse Buffy Torok, Corrections Officers Unknown Rees and Unknown Hawn, Captain/Inspector Gary Ferguson, Prisoner Counselor/Grievance Coordinator E. Simon, Prisoner Counselor Unknown Hengesbach, and Nurse Ericka Trainer-VanNortrick.

-1-

Plaintiff alleges that Defendant Hawn subjected him to excessive force on March 9, 2021, at 9:00 a.m.    Plaintiff states that, during COVID-19 testing, Defendant Hawn kicked Plaintiff in the leg while placing him back in his cell.   Defendant Hawn allegedly continued trying to kick Plaintiff multiple times. Plaintiff yelled at Defendant Torok seeking help, but she ignored Plaintiff.  Following the assault, Defendant VanNortrick refused to call Plaintiff out of his cell to check his injuries because Plaintiff had written a grievance on her weeks earlier.    Plaintiff was not able to get his injuries documented for two to three weeks because Defendant VanNortrick refused to examine Plaintiff.   Plaintiff was told by another nurse that all kites went to Defendant VanNortrick and that she threw Plaintiff's kites away.

Defendant Ferguson spoke to Plaintiff about the assault by Defendant Hawn on March 11, 2021.   Following this interview, Defendant Rees assaulted Plaintiff by kicking him and stepping on his foot before returning Plaintiff to his cell. Plaintiff wrote grievances about both assaults, but they were denied by Defendant Simon.   On March 15, Plaintiff spoke to Defendant Ferguson again, but Defendant Ferguson merely told Plaintiff that he was a liar and warned Plaintiff not to ask him for help.   Plaintiff spoke with an unnamed nurse on March 31, 2021, who told him that the video showing the assault by Defendant Hawn had been doctored, and that it now showed no one in the hallway.

Plaintiff contends that the call button in his cell has been removed and the water in his cell has been turned off.   Plaintiff alleges that his kites for assistance have been thrown away by staff.   Plaintiff states that Defendant Ferguson is responsible for letting these violations occur.   Plaintiff states that Defendant Ferguson prevented him from using J-pay on April 3, 2021.   On April 12, 2021, Plaintiff filed step II grievances related to the assaults by Defendants Hawn and Rees.

On April 14, 2021, Defendant Hawn refused to give Plaintiff a tray for the entire day.   On May 8, Defendant Hawn refused to allow Plaintiff to use J-pay.   On May 12, 2021, Plaintiff asked Defendant Hengesbach to take pictures of his cell, which had not been cleaned in four months.   The next day, Plaintiff's cell was finally cleaned.

On June 2, 2021, Defendants Hawn and Rees denied Plaintiff lunch, shower, yard time, and a cell cleaning.   Defendant Ferguson and Sergeant Swanson held Plaintiff's legal mail from June 3, 2021, until June 7, 2021.   On June 4, 2021, Defendant Ferguson made sure that Plaintiff's store order did not contain the items he had ordered.   On June 5, 2021, Plaintiff was assaulted by Defendants Hawn and Rees, and was not given enough time to eat.   Plaintiff was also denied a haircut.   On June 7, 2021, Defendant Ferguson made sure that Plaintiff did not get a store order at all. On June 14, 2021, Plaintiff requested a record of dates that he had received a shower, yard time, or a cell cleaning.   He never received the requested information.

On June 15, 2021, Plaintiff received a memo from Defendant Hengesbach stating that Plaintiff could not receive any more legal materials until he returned the ones he already had. Plaintiff states that he had already turned all the materials in and that Defendant Hengesbach was lying. On June 17, 2021, Plaintiff was refused yard time and a shower. On June 19, 2021, Defendant Rees refused to allow Plaintiff to use J-pay to report his issues to another inspector. On June 21, 2021, Defendant Ferguson told Defendant Hengesbach not to submit Plaintiff's grievances. On June 22, 2021, Plaintiff gave Defendant Hengesbach a kite and asked him why he was being retaliated against. On the same day, Defendants Hawn and Rees refused to allow Plaintiff yard time. On June 23, 2021, Plaintiff asked Defendant Rees why he was being retaliated against.

On June 29, 2021, Defendant Ferguson told the property room not to return Plaintiff's property even if he was off sanctions. Plaintiff still does not have his property. On June 30, 2021, Defendants Rees and Hawn banged on the rails during every round and gave Plaintiff less than five minutes to eat his breakfast and lunch. On July 2, 2021, Defendant Hawn turned off the water in Plaintiff's cell. On July 3, 2021, Defendant Rees refused to sign Plaintiff up for a haircut. On July 8, 2021, Defendants Rees and Hawn denied Plaintiff yard, cell cleaning, showers, breakfast, and laundry. Defendant Hawn attempted to deny Plaintiff lunch by walking by his cell very quickly, but then only gave Plaintiff five minutes to eat. On July 9, 2021, Defendant Hawn banged on Plaintiff's cell door during each round. On July 10, 2021,

Defendant Hawn denied Plaintiff shower and yard and banged on his cell door during each round.   On July 17, 2021, Plaintiff's cell was finally cleaned for the first time in months.

In a pleading filed a few weeks after Plaintiff's complaint, (ECF No. 6), Plaintiff added additional factual claims against Defendant Rees (Rees slammed Plaintiff's hand in the food slot on nine occasions between July 23, 2021, and August 25, 2021) and Defendant Hawn (Hawn slammed Plaintiff's hand in the food slot on four occasions between July 8, 2021, and July 14, 2021).

At this juncture, only the following claims remain: (1) excessive force against Defendant Rees; (2) excessive force against Defendant Hawn; (3) failure to protect against Defendant Torok; and (4) denial of medical treatment against Defendant VanNortrick.   (ECF No. 7).   Defendants Rees, Hawn, and VanNortrick now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.   Plaintiff has failed to respond to the motion.   The Court finds that oral argument is unnecessary.   *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."   *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d

at 735.   Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d at 474.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle."   *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).   Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.   *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).   Prisoners are no longer required to demonstrate exhaustion in their complaints.   *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.   *Ibid.*

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. The now current version of this Policy, which took effect on March 18, 2019, superseded the prior version which had been in effect since July 9, 2007. (MDOC Policy Directive 03.02.130 (Mar. 18, 2019). The events relevant to the present motion are governed by the previous version of the Policy. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ P (July 9, 2007). The prisoner must attempt to resolve the matter with staff within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ V (July

9, 2007).    The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."    MDOC Policy Directive 03.02.130 ¶ R (July 9, 2007).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.    MDOC Policy Directive 03.02.130 ¶ BB (July 9, 2007).    If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.    MDOC Policy Directive 03.02.130 ¶ FF (July 9, 2007).

Defendants have submitted evidence showing that the grievances Plaintiff pursued prior to initiating this action failed to exhaust any of his claims against them. (ECF No. 34-3 thru 5, PageID.247-80).    Plaintiff has failed to respond to the present motion and, therefore, has failed to refute or call into question Defendants' argument or evidence.    Plaintiff has likewise failed to present any evidence otherwise demonstrating that there exists a genuine factual dispute on the question whether he properly exhausted his administrative remedies regarding his claims against Defendants Rees, Hawn, or VanNortrick.    Accordingly, the motion for summary judgment filed by Defendants Rees, Hawn, and VanNortrick is hereby granted and Plaintiff's remaining claims against Defendants Rees, Hawn, and VanNortrick are dismissed without prejudice for failure to exhaust administrative remedies.

**CONCLUSION**

For the reasons articulated herein, Defendants' Motion for Summary Judgment (ECF No. 33) is granted and Plaintiff's remaining claims against Defendants Rees, Hawn, and VanNortrick are dismissed without prejudice for failure to exhaust administrative remedies.   For the same reasons the undersigned grants Defendants' motion, the undersigned finds that an appeal of this matter by Plaintiff would not be in good faith.   An Order consistent with this Opinion will enter.


Date: March 7, 2023                                    /s/ Phillip J. Green
                                                       PHILLIP J. GREEN
                                                       United States Magistrate Judge